ception in subdivision 5, § 872, applies only to a party to an action, and not to a person in his employ.

The order for the examination of Cole was in conformity with the provisions of section 873 in all respects, and the order vacating it must therefore be reversed, with $10 costs and disbursements, the application to set the original order aside be denied, with $10 costs, and the examination of the witness be directed to proceed on a day to be fixed. All concur.

(66 Misc. Rep. 342.)

PLATT v. FLOWER et al.

(Supreme Court, Appellate Division, First Department.    June 10, 1910.)

1. LANDLORD AND TENANT (§ 148*)—ASSIGNMENT OF LEASE—TAXES—APPORTIONMENT.

An agreement between a lessee and an assignee of the lease for an apportionment of taxes payable on the first Monday in October as of the date of delivery of possession did not apply to the year extending from that day back to the first Monday of October in the preceding year, but to the current fiscal year, which, as shown by New York City Charter (Laws 1901, c. 466) §§ 9, 10, 161, 195, 226, 237, 248, 249, 907, 909, 914, is coincident with the calendar year.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 522, 527; Dec. Dig. § 148.*]

2. LANDLORD AND TENANT (§ 79*)—ASSIGNMENT OF LEASE—CONSTRUCTION.

An assignment of a lease *held* subject to construction in connection with the city charter provisions affecting it.

[Ed. Note.—For other cases, see Landlord and Tenant, Dec. Dig. § 79.*]

3. EVIDENCE (§ 461*)—PAROL EVIDENCE—ADMISSIBILITY.

In a suit to recover money, evidence is inadmissible to show that an agreement for an apportionment of taxes was intended to apply to a period other than that indicated by the agreement as reduced to writing.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 1756; Dec. Dig. § 461.*]

Appeal from Special Term, New York County.

Action by Edward T. Platt, treasurer, against Fred S. Flower and others. From a judgment for plaintiff, defendants appeal. Affirmed.

The following is the opinion of Greenbaum, J., in the court below:

The plaintiff association was the lessee of the premises No. 49 Broadway, in the borough of Manhattan, city of New York, under a certain indenture of lease entered into between it and one Edmund Randolph Robinson as trustee on the 20th of December, 1908. This lease provided inter alia that the lessee should pay "all such duties, taxes, assessments and payments * * * as shall, during the term hereby demised, be assessed, imposed or become a lien or charge on * * * said demised premises." On January 16, 1907, by an instrument in writing, the plaintiff assigned the unexpired term of said lease to Flower & Co. The assignment provided that the assignee should assume from the date of delivery of possession of the premises all obligations and covenants in said original lease contained. By a further independent collateral agreement, Flower & Co. also promised to pay to the plaintiff, in addition to the rent reserved in the lease, the sum of $416.66 upon the last day of each month during the balance of the term assigned. The assignment also

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

contained the further provision out of which the present controversy arises, which reads as follows: "It being further understood and agreed that the taxes payable on the first Monday of October, 1907, shall be apportioned between the party of the first part and the party of the second part as of the day when possession shall be delivered as aforesaid and paid by said parties accordingly." Possession of the premises was delivered to the assignee on January 28, 1907. The defendants, who are the successors of the assignees, Flower & Co., admit that they have failed to pay installments fixed by the terms of the collateral agreement amounting in all to the sum of $1,666.64, but set up as a counterclaim thereto the sum of $1,282.99, which they claim to be due from the plaintiff under the provision in the assignment referred to as its proportionate part of the taxes amounting to $3,935.22, which became a lien upon the premises on the first Monday of October, 1907. The plaintiff contends that the payment of the tax on the first Monday of October, 1907, covered the period embraced in that calendar year, and that its liability is limited to that fractional part of the tax represented by the period from January 1 to January 28, 1907, or $28/365$ of the total amount paid. The defendants contend, on the other hand, that the payment of the tax in question was for what they claim to be the fiscal or taxable year, beginning the first Monday of October, 1906, and ending the first Monday of October, 1907, and that, under this interpretation, plaintiff is liable for that portion of the tax for the period intervening October 1, 1906, and January 28, 1907, or $119/365$ of the total amount paid. Defendants also argue that, conceding the correctness of plaintiff's contention, the fiscal year and calendar year are the same, the principle of the apportionment that the parties intended to adopt is still left in doubt by the language of the provision in question, and that parol evidence of the intention of the parties should have been received upon the trial. I am of the opinion that the period covered by the payment of the tax is clearly and unmistakably defined by various sections of the Greater New York charter relating to and which outline the statutory scheme for the raising, collection, and payment of the annual expenses for conducting the business of the city of New York. In construing the language of the assignment. the provisions of the charter affecting this question must be read into the agreement with the same effect as if set forth at length therein.

Turning to the charter provisions, we find that the board of estimate and apportionment is directed to meet between October 1st and November 1st to make up a budget of amounts required to pay the expenses of conducting the public business of the city for the next ensuing year. Laws 1901, c. 466, § 226. Section 249 directs that the aggregate amount of this annual budget as finally adopted be certified by the comptroller to the board of aldermen, who are required to cause to be raised and collected the amount so certified. By section 907 it is provided that, beginning with the 1st day of April, the annual record of assessed valuations of real and personal estate shall be delivered to the board of aldermen, who are directed by section 909 to thereafter compute and fix the taxes annually imposed and extend the same in the several assessment rolls or tax books, and, after completion thereof and after execution of the proper warrants, to deliver the same to the receiver of taxes for collection. The taxes so imposed are made payable and become a lien upon the real estate affected thereby on the first Monday of October following (section 914). It is therefore clear that it is the amount of the budget made up for the ensuing year that is raised and collected in the form of taxes, and the mere fact that such taxes become a lien and are payable the first Monday of October cannot alter or affect the plain languge of the statutes fixing the period for which the tax is paid. There are numerous other provisions of the charter, among which may be mentioned sections 9, 10, 161, 195, 237, and 248, all of which confirm the fact that the fiscal year of the city of New York is coincident with the calendar year, and I have been unable to find anything in the charter provisions that points to a different conclusion. Further support for these views is found in section 57 of the general construction law (chapter 27, Laws 1909; Consol. Laws, c. 22), where the word "year" when used in a public statute is defined as meaning a period of 365 days, while from the first Monday of October to the first Monday of October following is a variable period, amounting in the present instance to 371 days.

If the parties in fact agreed that the tax should be apportioned for the period embraced between the first Monday of October, 1906, and the first Monday of October, 1907, and the instrument does not express their true intention, then it may be that the defendant's remedy would be found in an action to reform the agreement to conform it to the intention of the parties, but this relief cannot be granted to the defendant in this action without violating the principle that prohibits the reception of parol evidence to contradict or vary the terms of a valid written instrument. Evans v. Meyers, 25 Pa. 114. See, also, Security Bank v. Nat. Bank, 67 N. Y. 458, 23 Am. Rep. 129. The plaintiff is therefore entitled to judgment for the sum demanded in the complaint, with costs, less the sum of $301.80, with interest thereon from the 7th day of October, 1907, the conceded portion of the tax due from the plaintiff.

Louis S. Phillips, for appellants.
B. P. Kerfoot, for respondent.

PER CURIAM. Judgment affirmed, with costs, on opinion in the court below. Order filed.

---

UNITED STATES WOOD PRESERVING CO. v. CITY OF NEW YORK.

(Supreme Court, Appellate Division, First Department. June 3, 1910.)

1. MUNICIPAL CORPORATIONS (§ 360*)—STREET PAVING CONTRACT—"EXTRA WORK."

Putting in expansion joints in a wood block pavement is "extra work," within a contract requiring, as a condition to a claim therefor, or its allowance, that it shall be first authorized in writing, and the price to be paid therefor be agreed on in the same way.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 892, 892½; Dec. Dig. § 360.*

For other definitions, see Words and Phrases, vol. 3, p. 2624.]

Appeal from Trial Term, New York County.

Action by the United States Wood Preserving Company against the City of New York for extra work under a paving contract. From a judgment for plaintiff, and from an order denying a new trial, defendant appeals. Reversed.

Argued before INGRAHAM, P. J., and McLAUGHLIN, MILLER, LAUGHLIN, and DOWLING, JJ.

Terence Farley, for appellant.
John J. Cunneen, for respondent.

MILLER, J. On the 23d of June, 1905, the plaintiff entered into a contract with the defendant for repaving Broadway in the borough of Queens with wood block pavement, and on the 27th of June, 1905, entered into a similar contract for repaving Second avenue. The contracts contained the following provision:

"Extra Work Limited.

"No claim for extra work or materials shall be made by or allowed to the contractor unless before the performance of such extra work the president shall have first authorized the same in writing, and the price or prices to be paid therefor shall first have been agreed upon in writing between the president and the contractor, and the same shall have been done or furnished under a written order from the president, given before the performance of such ex-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes